UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL THOMAS SCUDERI,

                         Plaintiff,

v.                                              6:15-CV-0470
                                                (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

Office of Peter M. Hobaica, LLC                  B. BROOKS BENSON, ESQ.
  Counsel for Plaintiff
2045 Genesee St.
Utica, NY 13501

U.S. SOCIAL SECURITY ADMIN.                     DAVID L. BROWN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II         PRASHANT TAMASKAR, ESQ.
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 24.)  This case has proceeded in accordance with General

Order 18.

Currently before the Court, in this Social Security action filed by Michael Thomas

Scuderi ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 13, 23.)  For the reasons set forth

below, it is recommended that Plaintiff's motion be denied and Defendant's motion be

granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on February 28, 1989.  (T. 141.)  He completed two years of

college.  (T. 159.)  Generally, Plaintiff's alleged disability consists of depression, anxiety,

dysgraphia, attention deficit disorder ("ADD"), congenital dyserythropoietic anemia, and

"short temper."  (T. 158.)  His alleged disability onset date is March 15, 2012.  (T. 155.)

### B.    Procedural History

On March 21, 2012, Plaintiff applied for a Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act.  (T. 155.)  Plaintiff's application was initially

denied, after which he timely requested a hearing before an Administrative Law Judge

("the ALJ"). On August 28, 2013, Plaintiff appeared before the ALJ, Gregory M. Hamel.

(T. 31-69.)  On November 26, 2013, ALJ Hamel issued a written decision finding

Plaintiff not disabled under the Social Security Act.  (T. 14-30.)  On February 12, 2015,

the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's

decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely

sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and

conclusions of law.  (T. 19-26.)  First, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since March 21, 2012.  (T. 19.)  Second, the ALJ found that

Plaintiff had the severe impairments of anemia, impulse control disorder, ADD, major depressive disorder, intermittent explosive disorder, generalized anxiety disorder, and substance abuse. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 20-21.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work. (T. 21.)[1] The ALJ found that Plaintiff could perform routine and repetitive tasks only and he could not do tasks which required more than occasional public contact or more than occasional interaction with coworkers. (*Id.*) Fifth, the ALJ determined that Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 24-26.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes five separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to give controlling weight to the opinion of Plaintiff's treating psychologist. (Dkt. No. 13 at 11-17 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ failed to properly evaluate Plaintiff's mental impairments and resulting functional limitations. (*Id.* at 17-20.) Third, Plaintiff argues the ALJ failed to find that Plaintiff met or equaled a Listing. (*Id.* at 20-22.) Fourth, Plaintiff argues the ALJ failed to fully consider Plaintiff's hearing testimony in his credibility analysis. (Id. at 22-23.) Fifth, and lastly, Plaintiff argues the ALJ erred in

---

[1]     Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work. 20 C.F.R. § 416.967(c).

relying on vocational expert ("VE") testimony because the ALJ's RFC and credibility analysis were faulty.  (*Id.* at 23-25.)

## B.    Defendant's Arguments

In response, Defendant makes five arguments.  First, Defendant argues the ALJ properly weighed the treating psychologist's opinion.  (Dkt. No. 23 at 5-8 [Def.'s Mem. of Law].)  Second, Defendant argues the ALJ properly assessed Plaintiff's mental RFC. (*Id.* at 8-9.)  Third, Defendant argues the ALJ properly found that Plaintiff did not meet a Listing.  (*Id.* at 9.)  Fourth, Defendant argues the ALJ properly assessed Plaintiff's hearing testimony.  (*Id.* at 9-11.)  Fifth, and lastly, Defendant argues the ALJ properly relied upon VE testimony.  (*Id.* at 11-12.)

## III.    RELEVANT LEGAL STANDARD

## A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation

process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The

five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work activities.
> If the claimant suffers such an impairment, the third inquiry is whether,
> based solely on medical evidence, the claimant has an impairment which
> is listed in Appendix 1 of the regulations.  If the claimant has such an
> impairment, the [Commissioner] will consider him disabled without
> considering vocational factors such as age, education, and work
> experience; the [Commissioner] presumes that a claimant who is afflicted
> with a "listed" impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has the
> residual functional capacity to perform his past work.  Finally, if the
> claimant is unable to perform his past work, the [Commissioner] then
> determines whether there is other work which the claimant could perform.
> Under the cases previously discussed, the claimant bears the burden of
> the proof as to the first four steps, while the [Commissioner] must prove
> the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.     ANALYSIS

### A.     Treating Psychologist, David Stang, Psy.D.

The opinion of a treating source will be given controlling weight if it "is well

supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §

416.927(c)(2); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much

weight the opinion should receive, even if the treating source is not given controlling

weight: "(i) the frequency of examination and the length, nature, and extent of the

treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's

consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 416.927(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Dr. Stang conducted an examination of Plaintiff in July of 2012 and provided Plaintiff with individual therapy from September 2012 to December 2012. (T. 331, 328-331.) In July of 2012, Dr. Stang met with Plaintiff and also conducted a telephone interview with Plaintiff's mother and Plaintiff's family friend who occasionally employed Plaintiff. (T. 283.) Plaintiff informed Dr. Stang that he worked occasionally as a laborer. (*Id.*) Plaintiff informed Dr. Stang that he was arrested for selling a controlled substance during his senior year at a four year college and was consequently expelled. (*Id.*) Plaintiff also provided a narrative of his symptoms and issues surrounding his depression and anger. (T. 284.) Plaintiff informed Dr. Stang that he smoked marijuana and had no intention of stopping. (T. 286.) Plaintiff informed Dr. Stang that he works odd jobs in order to support his marijuana use. (*Id.*)

Dr. Stang conducted a mental status examination during his July 2012 consultation. Dr. Stang observed that Plaintiff was "highly verbal, highly articulate and obviously bright." (T. 287.) Dr. Stang noted Plaintiff's speech was clear and his thought processes were organized and goal directed. (*Id.*) He observed that Plaintiff exhibited a full range of affect and Plaintiff described his current mood as "irritable." (*Id.*) Dr. Stang noted Plaintiff was fully oriented, could perform serial three exercises and could recall three out of three words after a five minute interval. (*Id.*) Dr. Stang observed that

Plaintiff "displayed mild difficulties at digit forward exercises and he displayed moderate deficits at digit backwards exercises." (*Id.*) He noted that overall Plaintiff's intellectual functioning was within the high average range. (*Id.*) Plaintiff told Dr. Stang he was able to care for his own personal needs, had several good friends, and spent his days watching movies and TV. (T. 287-288.)

Dr. Stang opined that Plaintiff could perform very simple work tasks for brief periods of time, but that Plaintiff could not consistently sustain a full eight hour per day work pace. (T. 288.) Dr. Stang stated that Plaintiff's inability to work was due to his anger and irritability. (*Id.*) Dr. Stang further stated that Plaintiff had a tendency to become immobilized by depression. (*Id.*) Dr. Stang noted that Plaintiff had not received psychiatric medication since 2010 and instead depended on marijuana. (T. 289.) Dr. Stang opined that "it is likely that when he withdraws from marijuana, he becomes quite irritable." (*Id.*)

Dr. Stang provided Plaintiff psychotherapy on September 22, 2012; October 16, 2012; October 20, 2012; and December 28, 2012. (T. 328-331.) Dr. Stang's treatment notations do not contain mental status examinations. In September, Dr. Stang noted that Plaintiff physically assaulted his father and was currently staying with a friend. (T. 331.) Dr. Stang noted Plaintiff was in a "state of crisis." (*Id.*) In October, Dr. Stang noted that Plaintiff's "crisis has now eased up to some extent." (T. 330.) Dr. Stang noted that Plaintiff was unable to verbalize responsibility for his actions. (*Id.*) Plaintiff declined a referral for medication and informed Dr. Stang that marijuana was the only medication that worked for him. (*Id.*) Plaintiff informed Dr. Stang that he was traveling to California for a wedding. (*Id.*) In December Dr. Stang again noted Plaintiff's anger

and indicated that his focus was on helping Plaintiff accept responsibility for his behavior.  (T. 328.)

On September 16, 2013, nine months after last treating Plaintiff, Dr. Stang completed a form titled "Mental Impairment Questionnaire (Listings)" and a form titled "Medical Source Statement of Ability to Do Work-Related Activities (Mental)."  (T. 318-321, 322-324.)  In the Listings questionnaire, Dr. Stang opined that Plaintiff had "marked" restrictions in activities of daily living; "none/mild" restrictions in maintaining social functioning; "none/mild" restrictions in maintaining concentration, persistence or pace; and no episodes of decompensation.  (T. 320.)[2]  Dr. Stang indicated Plaintiff would be absent more than four days a month due to impairments or treatment.  (T. 321.)

In the Medical Source Statement, Dr. Stang opined Plaintiff had limitations in his ability to understand, remember, and carry our instructions.  (T. 322.)  Dr. Stang specifically opined Plaintiff had no limitations in his ability to: understand and remember simple instructions; carry out simple instructions; make judgments on simple work-related decisions; understand and remember complex instructions; or carry out complex instructions.  (*Id.*)  Dr. Stang opined Plaintiff had "moderate" limitations in his ability to make judgments on complex work-related decisions.  (*Id.*)

Dr. Stang provided functional limitations regarding Plaintiff's ability to interact appropriately with others in a work setting.  Dr. Stang opined that Plaintiff had "marked" limitations in his ability to: interact appropriately with the public; and, respond appropriately to usual work situations and to changes in a routine work setting.  (T.

---

[2]     The form defined "marked" as "more than moderate but less than extreme."  The form defined "extreme" as a "major limitation . . . [t]here is no useful ability to function in this area."  (T. 320.)

323.)  Dr. Stang opined that Plaintiff had "extreme" limitations in his ability to: interact appropriately with supervisors and interact appropriately with co-workers.  (*Id.*)

The ALJ afforded "very limited weight" to Dr. Stang's opinion that Plaintiff had "marked" to "extreme" limitations with his judgment and interacting with others, and that he'd be unable to maintain a full time job.  (T. 24.)  The ALJ reasoned that the opinions were 1) inconsistent with Plaintiff's "sporadic" mental health treatment, 2) inconsistent with Plaintiff's "relatively normal" mental health findings by consultative examiner, Rachelle Hansen, Psy.D., 3) inconsistent with Plaintiff's lack of mental health medication, and 4) inconsistent with Plaintiff's reported activities.  (T. 24.)

Plaintiff argues that the reasons provided by the ALJ for affording "very limited weight" to Dr. Stang's opinion were not "good reasons," and were "completely insufficient."  (Dkt. No. 13 at 12-17 [Pl.'s Mem. of Law].)[3]

Of note, the ALJ's determination that Plaintiff could perform routine and repetitive tasks was supported by Dr. Stang's opinion that Plaintiff had no limitations in his ability to understand, remember, and carry out simple routine repetitive tasks.  (T. 21, 322.)  The issue here is whether the ALJ properly weighed Dr. Stang's opinion that Plaintiff had marked to extreme limitations in his ability to interact appropriately with others and respond to changes in the work setting.  Plaintiff does not argue that the ALJ's physical RFC determination was made in error or not supported by substantial evidence.

The ALJ's determination to afford Dr. Stang's opinion "very limited weight" was made in accordance with the Regulations, constituted "good reasons," and supported by substantial evidence.

---

[3]          Of note, Plaintiff cites to "Medical Source Statement (Mental)" in the record at T. 315; although the form is addressed to Dr. Stang the form is not dated or signed by Dr. Stang.

First, the ALJ concluded that Dr. Stang's limitations were not consistent with Plaintiff's mental health treatment. (T. 24.) The ALJ appears to use the term "sporadic" to describe Plaintiff's treatment. The ALJ did not use Plaintiff's "sporadic" treatment as substantive evidence to support his disability determination, instead, the ALJ "highlighted . . . this kind of evidence merely as a marker that [he] considered the evidence [he] had before [him]." *Clayton v. Colvin*, 99 F. Supp. 3d 269, 277 (N.D.N.Y. 2015). The ALJ did not rely on the "lack" of evidence in making his determination, instead, his decision made clear that he relied on evidence in the record to support his determination.

Further, the ALJ would not have committed error, even had he relied, in part, on Plaintiff's "sporadic treatment." (T. 24.); *see Lefever v. Astrue*, No. 5:07-CV-0622, 2010 WL 3909487, at *8 (N.D.N.Y. Sept. 30, 2010), *aff'd,* 443 F. App'x 608 (2d Cir. 2011) (ALJ did not err in relying, in part, on plaintiff's sporadic mental health treatment in his determination). Plaintiff contends that the record shows a "long history" of mental health treatment. (Dkt. No. 13 at 14 [Pl.'s Mem. of Law].) Although Plaintiff' mental health history may have been "long," it was nonetheless, sporadic. In addition, in support of his argument, Plaintiff cites to evidence in the record from his primary care physician, Bruce Slagel, M.D. who referred him to a Dr. Ochoterena for an evaluation because Plaintiff was noncompliant with treatment and intolerant to medication. (T. 258.)[4]

---

[4]     Plaintiff met with Fiorica Ochotorena, M.D. on September 16, 2013. (T. 356-357.) Plaintiff informed Dr. Ochotorena that he was depressed and anxious. (T. 356.) He informed her that concentration was not a problem, he had "some irritability," no verbal outbursts, and no physically aggressive behavior. (*Id.*) Dr. Ochotorena performed a mental status examination which revealed that Plaintiff's thought processes were normal, his description of associations was intact, he had no abnormal or psychotic thoughts, his had intact judgment and insight, he was oriented, his memory was intact, his attention and concentration were good, his language was intact, his fund of knowledge was intact and good, and his mood and affect were "low mood" with some anxiety noted. (T. 357.) Dr. Ochotorena's

Plaintiff also relies on notations by primary care providers which, although they contain a complaint of anxiety (T. 332) and fatigue (T. 334), did not contain mental health examinations, treatments, or medications. Many of the notations do not pertain to the relevant time period. (T. 339-349.) Plaintiff also relies on records which contain complaints of fatigue and "paperwork to be filled out" (T. 290) and lab results (T. 291-313), but contain no mental health notations. (Dkt. No. 13 at 14 [Pl.'s Mem. of Law].) Therefore, the ALJ did not err in taking into consideration Plaintiff's mental health treatment as one factor in his overall analysis of Dr. Stang's opinion.

Second, the ALJ properly concluded that Dr. Stang's limitations were not supported by the objective mental health examinations made during Plaintiff's consultative examination. (T. 24.) During the consultative examination, Dr. Hansen observed that Plaintiff was appropriately dressed, his eye contact was appropriate, he was coherent and goal directed, he demonstrated a full range of affect and was appropriate in speech and thought content. (T. 265-266.) Dr. Hansen observed that Plaintiff was oriented, his mood was neutral and his sensorium was clear. (T. 266.) She noted Plaintiff's attention and concentration were intact in the evaluation setting, his recent and remote memory skills were intact in the evaluation setting, and his intellectual functioning appeared to be average. (*Id.*) Dr. Hansen noted Plaintiff's insight and judgment were poor. (*Id.*) Dr. Hansen ultimately opined Plaintiff was able to: follow and understand simple directions and instructions; perform simple tasks independently; maintain attention and concentration; maintain a regular schedule; learn new tasks; and perform complex tasks. (T. 267.) She opined Plaintiff may have

---

notations indicated NA meetings were strongly advised and prescribed Lamictal. (*Id.*) The record does not contain any additional notes from Dr. Ochotorena.

difficulties making appropriate decisions and dealing with stress, but Plaintiff was able to relate adequately with others.  (*Id.*)

In addition, Dr. Stang's medical opinions were not formulated concurrent with treatment, but instead completed nine months after he last treated Plaintiff, which undermines the opinion.  *Batchelder v. Astrue,* 2011 WL 6739511, at *9 (N.D.N.Y.2011) ("Although deference should be accorded to [the treating physicians' opinion], the unexplained gap between [the] most recent examination of plaintiff and the preparation of the [ ] report, suggest[s] that such deference would not be appropriate.")

The ALJ properly relied on Dr. Hansen's objective mental status examination in his analysis of Dr. Stang's medical opinion.  Dr. Hansen's examination, and opinion regarding Plaintiff's ability to interact with others, were inconsistent with Dr. Stang's limitations.  *Snyder v. Colvin*, No. 15-CV-3502, 2016 WL 3570107, at *1 (2d Cir. June 30, 2016) ("The opinion of a treating physician is not binding if it is contradicted by substantial evidence, and a consulting physician report may constitute such evidence."). There are essentially only two mental status examinations in the record during the relevant time period, one conducted by Dr. Stang and one by Dr. Hansen.  The ALJ properly reasoning that objective medical evidence did not support Dr. Stang's social limitations.

In addition, Dr. Stang's own mental status examination did not support the limitations he opined to in his medical source statement.  Dr. Stang performed a "brief" mental status examination and determined that Plaintiff's speech was clear, his thought processes were organized and goal directed, and he had a full range of affect.  (T. 287.)

Plaintiff also argues that the ALJ failed to provide a narrative explaining his reasoning for accepting Dr. Hansen's findings over Dr. Stang's findings.  (Dkt. No. 13 at 15-16 [Pl.'s Mem. of Law].)  A reviewing court "defer[s] to the Commissioner's resolution of conflicting evidence."  *Cage v. Comm'r of Soc. Sec.,* 692 F.3d 118, 122 (2d Cir. 2012).  It is, however, "not require[d] that ALJ have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."  *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983); *see also Miles v. Harris,* 645 F.2d 122, 124 (2d Cir.1981) (rejecting the proposition that the hearing officer must explicitly reconcile "every shred" of conflicting testimony).  Here, the ALJ provided ample reasoning in his determination to support his conclusion to provide more weight to Dr. Hansen's findings. The ALJ outlined his reasoning for providing each source weight, and as discussed herein, the ALJ properly afforded less weight to the opinion of Dr. Stang.

Third, the ALJ did not err in taking into consideration Plaintiff's lack of mental health medication or his activities of daily living in his assessment of Dr. Stang's opinion.  (T. 24.)  Plaintiff's apparent refusal to take medication by choice was not "irrelevant" as Plaintiff argues.  (Dkt. No. 13 at 16 [Pl.'s Mem. of Law].)  The ALJ properly relied on Plaintiff's ability to function, without medication, as evidenced by his activities as being inconsistent with Dr. Stang's limitations.  The ALJ specifically noted that despite lack of medication, Plaintiff was able to care for himself and his surroundings, use a computer, and attend college.  (T. 24.)  Further, any error the ALJ's may have made in relying on Plaintiff's ability to engage in daily activities was harmless, because it was only one factor in his overall evaluation of Dr. Stang's opinion.

Accordingly, it is recommended, for the reasons stated herein and further outlined in Defendant's brief, that the ALJ's determination to afford limited weight to Dr. Stang's opinion be upheld. The ALJ provided good reasons for the weight he afforded the doctor's opinion and his determination was supported by substantial evidence.

## B.      The ALJ's RFC Determination

Plaintiff argues that the ALJ erred in his RFC determination because he failed to comply with Social Security Ruling ("SSR") 96-8p which requires that the ALJ express any limitations in terms of work-related functions. (Dkt. No. 13 at 17-19 [Pl.'s Mem. of Law].)

First, the Second Circuit has held that the failure to explicitly engage in a function-by-function analysis as part of the RFC assessment does not constitute a per se error requiring remand. *See Chichocki v. Astrue,* 729 F.3d 172, 174 (2d Cir. 2013).

Second, contrary to Plaintiff's contention, the ALJ's RFC analysis sufficiently explained how he reached his determination. In formulating his mental RFC determination, the ALJ relied on the mental health examination and medical source statement of Dr. Hansen. (T. 24.) Dr. Hansen ultimately opined that Plaintiff was capable of simple work, could relate adequately with others, but might have difficulty dealing with stress. (T. 266-267.) Therefore, the ALJ did not err in his failure to explicitly engage in a function-by-function analysis; and further, the ALJ sufficiently discussed and weighed the medical evidence in the record which supported his determination that Plaintiff retained the mental RFC to perform essentially simple work with only occasional contact with the public and no more than occasional interaction with coworkers. (T. 21.) For the reasons stated herein at Part IV.A and B and further

outlined in Defendant's brief, it is recommended that the ALJ's RFC determination be upheld.

**C.    The ALJ's Step Three Determination**

If the ALJ determined that a plaintiff has a severe mental or physical impairment at step two of the disability evaluation procedure, the ALJ must then determine whether the impairment meets the criteria of any impairment listed in Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii)(d).  The impairments listed in Appendix 1 are considered severe enough to prevent a plaintiff from doing any gainful activity. *Id.* at § 416.925(a).  If a plaintiff's impairment, or combination of impairments, matches one listed in Appendix 1, and satisfies the duration requirement in 20 C.F.R. § 416.909, then the ALJ should generally find the plaintiff disabled without considering the plaintiff's age, education, and work experience.  *Id.* at § 416.920(d).

To match an impairment listed in Appendix 1, Plaintiff's impairment "must meet all of the specified medical criteria" of a listing.  *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1).  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Id.*  An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 416.926(a).  Although an ALJ may award benefits at step three, a plaintiff who fails to prove his impairment matches or equals one listed in Appendix 1 is not denied benefits, but rather, the ALJ must proceed to step four.  *See id.* at § 416.920(e).

To satisfy the criteria of Listings 12.04, 12.06, or 12.08, Plaintiff must meet the requirements of paragraph A *and* either paragraph B or paragraph C of the Listing[5]. Paragraph B of each of these Listings requires that Plaintiff demonstrate that his mental impairment resulted in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Secs. 12.04(B), 12.06(B), 12.08(B).

Or, in the alternative, paragraph C of Listings 12.04 requires a medically documented chronic affective disorder of at least two years duration, with at least one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that resulted in such a marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of one or more years' inability to function outside a highly supportive living environment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Secs. 12.04(C). Paragraph C of Listing 12.06 requires an anxiety-related disorder "[r]esulting in complete inability to function independently outside the area of one's home." *Id.* at Sec. 12.06(C).

Plaintiff essentially argues that although Dr. Stang opined in his Mental Impairments Questionnaire (Listings) form that Plaintiff's mental impairments did not meet a Listing, that when read in combination with his opinion in his Medical Source

---

[5]      Listing 12.08 does not have paragraph C criteria.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.08.

Statement of Ability to Do Work-Related Activities form, his opinion supported the conclusion that Plaintiff met a Listing. (Dkt. No. 13 at 20-22 [Pl.'s Mem. of Law].)[6]

For the reasons stated in Part IV.A, the ALJ properly afforded Dr. Stang's opinion "very limited weight." Therefore, the ALJ did not err in failing to rely on a combined reading of his opinions in making his step three determination.

### D. The ALJ's Credibility Determination

Plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate Plaintiff's reported symptoms. *See* 20 C.F.R. § 416.929; SSR 96–7p. First, the ALJ must determine whether, based on the objective medical evidence, Plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 416.929(a); SSR 96–7p. Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and

---

[6]     After stating his argument Plaintiff outlines how he meets the Paragraph A criteria of Listing 12.04 and 12.06. (Dkt. No. 13 at 20-21 [Pl.'s Mem. of Law].)  However, the criteria of Paragraph A *and* B or C must be established to satisfy the Listing.

limiting effects of those symptoms to determine the extent to which the symptoms limit Plaintiff's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication Plaintiff takes or has taken to relieve his pain or other symptoms; (5) other treatment Plaintiff receives or has received to relieve his pain or other symptoms; (6) any measures that Plaintiff takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning Plaintiff's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. § 416.929(c)(3)(i)-(vii); SSR 96-7p.

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. (T. 23.) In making his determination the ALJ relied on Plaintiff's ability to work after his alleged onset date and his activities of daily living. (*Id.*)

Plaintiff argues the ALJ "simply ignored much of the Plaintiff's testimony" and instead focused on "snippets of activity." (Dkt. No. 13 at 22-23 [Pl.'s Mem. of Law].) For the reasons outlined below, the ALJ's credibility determination was made in accordance with the Regulations and supported by substantial evidence.

Throughout his decision the ALJ discussed Plaintiff's testimony at the hearing and in his disability application; therefore, contrary to Plaintiff's contention the ALJ did not simply ignore much of his testimony. At step two the ALJ outlined Plaintiff's

testimony and although a step two determination is not an RFC analysis, the ALJ's discussion at that step indicates that the ALJ was aware of Plaintiff's testimony and took it into consideration. (T. 20.) The ALJ also specifically addressed Plaintiff's testimony regarding his activities in his step four analysis, which includes the credibility assessment. (T. 22.) Further, the ALJ not only summarized Plaintiff's testimony at the hearing and in his application, but the ALJ also took into consideration Plaintiff's symptoms and activities of daily living as he reported them to medical sources. (*Id.*) The ALJ did not ignore Plaintiff's testimony. The ALJ considered Plaintiff's testimony, as provided at the hearing, in his application, and to medical providers, throughout his decision and specifically in his credibility analysis.

Plaintiff also makes the conclusory argument that the ALJ failed to adhere to the factors outlined in the Regulations in making his credibility analysis. (Dkt. No. 13 at 22 [Pl.'s Mem. of Law].) Where an ALJ's reasoning and adherence to the Regulations is clear, he is not required to explicitly go through each and every factor of the Regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

The ALJ properly adhered to the Regulations. As discussed herein, the ALJ relied on Plaintiff's testimony regarding his activities of daily living under 20 C.F.R. § 416.929(c)(3)(i). (T. 20, 22-23.) The ALJ discussed Plaintiff's lack of prescription medication and Plaintiff's self-medicating behavior under 20 C.F.R. § 416.929(c)(3)(iv) and (vi). (T. 23.) The ALJ also discussed Plaintiff's treatment under 20 C.F.R. §

416.929(c)(3)(v).  (T. 23-24.)  Therefore, the ALJ considered the factors outlined in the Regulations in making his credibility determination.  It is therefore recommended that the ALJ's credibility determination be upheld.

### E.    The ALJ's Step Five Determination

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).

Plaintiff argues the ALJ's step five determination was made in error because the hypothetical posed to the VE was based on an erroneous RFC determination.  (Dkt. No. 13 at 23-24 [Pl.s Mem. of Law].)

Because we find no error in the ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the VE that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553–54 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record).

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report.

Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:　　　August 10, 2016

William B. Mitchell Carter
U.S. Magistrate Judge